**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

JERMAINE JOHNSON,
*individually and on behalf of all others*
*similarly situated,*

      Plaintiff,

      v.                             Civil Action No. 25-1949-TDC

KODY DOMESTICS II, INC.,
*d/b/a Waldorf Dodge Ram*, and
FCA US LLC,

      Defendants.

**MEMORANDUM OPINION**

Plaintiff Jermaine Johnson has filed this putative class action on behalf of himself and similarly situated individuals against Defendants Kody Domestics II, Inc., d/b/a Waldorf Dodge Ram ("Waldorf Dodge") and FCA US LLC ("FCA"), alleging various state law claims arising from Defendants' sale to him of a Dodge Ram truck with an allegedly defective engine and the subsequent cancellation of a lifetime warranty he had purchased for that vehicle. Defendants have filed separate Motions to Dismiss, which are fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. See D. Md. Local R. 105.6. For the reasons set forth below, FCA's Motion will be GRANTED IN PART and DENIED IN PART, and Waldorf Dodge's Motion will be DENIED.

**BACKGROUND**

The presently operative Amended Complaint sets forth the following relevant facts, which the Court accepts as true for purposes of resolving the Motions.

Plaintiff Jermaine Johnson, a resident of Prince George's County, Maryland, purchased a new 2016 Ram 3500 pickup truck from Waldorf Dodge on December 24, 2016. FCA, a Delaware limited liability company based in Auburn Hills, Michigan, designs, manufactures, markets, distributes, and warrants Dodge, Ram, Jeep, and Chrysler vehicles equipped with Gen III 5.7-liter HEMI and 6.4-liter HEMI 392 V-8 engines. Waldorf Dodge, a Maryland corporation, is an FCA-authorized car dealership and franchisee that sells FCA vehicles and FCA-issued warranties and also performs warranty service in accordance with FCA policies. Under Maryland law, FCA is prohibited from selling vehicles directly to consumers, so it sells its vehicles through authorized dealerships, including Waldorf Dodge.

## I.    The Ram Truck Purchase

On December 24, 2016, Johnson visited the Waldorf Dodge dealership in Waldorf, Maryland. Prior to this visit, Johnson had seen various television and online advertisements for Dodge Ram trucks. In that time frame, FCA had arranged for television advertisements that emphasized the "lasting reliability" and "work-ready durability" of Dodge Ram trucks, websites that described Dodge Ram trucks as "engineered for long-term dependability," and brochures similarly promoting HEMI V8 engines. Am. Compl. ¶¶ 55–56, ECF No. 35.

Dodge Ram trucks are sold with certain warranties, including the Basic Limited Warranty, which provides 3 years or 36,000 miles of bumper-to-bumper coverage, and the Powertrain Warranty, which provided 5 years or 60,000 miles of coverage. When Johnson arrived at Waldorf Dodge, authorized sales personnel approached him and explained FCA's "Mopar Lifetime Maximum Care Warranty" ("the Lifetime Warranty") and emphasized that it covered a vehicle's engine and powertrain. Id. ¶¶ 35, 36. The Lifetime Warranty, which provided coverage beyond the limited warranties that came with a vehicle, was FCA's "most comprehensive protection plan"

under which more than 5,000 vehicle components would be repaired or replaced at no cost so long as the original purchaser owned the vehicle. *Id.* ¶ 25.

During his discussions with the Waldorf Dodge sales manager, Johnson mentioned that the truck was a birthday gift to himself. When the sales manager asked what Johnson did for a living, Johnson responded that he owned a construction company. The sales manager then stated that the purchase would be both a gift to himself and to his company, Johnson would "never need another work truck," the truck would be "covered for life" under the Lifetime Warranty, and the purchase would be "the best investment [he] would ever make." *Id.* ¶ 37. Relying on these statements, Johnson agreed to buy a new 2016 Dodge Ram 3500 heavy-duty pickup truck equipped with a 6.4-liter HEMI V8 engine ("the Ram Truck") and also agreed to purchase the Lifetime Warranty.

In purchasing the Ram Truck, Johnson signed a sales contract ("the Sales Contract") that includes a page relating to warranties and service plans that referenced the sale of the Lifetime Warranty, identified as "MAXCARE," for $5,995.00. *Id.* ¶ 33; Sales Contract at 1, Am. Compl. Ex. 1, ECF No. 35-1. This page includes an "Important Notice to Contract Holder" stating that "[y]our signature means the coverage and the actual plan indicated above has been reviewed by you, and if your application is approved by FCA US LLC, you accept its terms and conditions." Sales Contract at 1. The page also includes an "Important Notice to Dealer" stating that the dealer's signature on the form signifies that "[t]his vehicle qualifies for the contract," that the dealer "will provide service to the contract holder in accordance with the provisions of the contract FCA US LLC will issue to the contract holder," and that "FCA US LLC may set off any money it owes you to reimburse for any claim due to breach of the foregoing representations and/or your failure to perform your obligations as FCA US LLC's agent with regard to this contract." *Id.* The bottom of the document includes a "Note to Consumer" that states that "[t]his document is an

application for a Mopar Vehicle Protection plan and does not constitute a contract until accepted by FCA US LLC." *Id.*

Johnson asserts that he was not provided with a full Lifetime Warranty document at the time of sale, but during a service appointment on May 23, 2018, Waldorf Dodge provided to him a "Waldorf Dodge VIP Summary Report" that listed the Ram Truck as covered under the Lifetime Warranty program. Am. Compl. ¶ 40. Specifically, in a section entitled "Existing Mopar Vehicle Protection Plans," the VIP Summary Report listed the "Lifetime Maximum Care" plan with a deductible of $100, an expiration date of March 23, 2100, and expiration mileage of 999,999 miles. VIP Summary Report at 2, Am. Compl. Ex. B, ECF No. 35-2. Johnson alleges that FCA stopped selling the Lifetime Warranty in December 2018.

## II.    Warranty Coverage and Cancellation

On May 23, 2018, Johnson brought the Ram Truck to Waldorf Dodge because of an automatic transmission issue. Waldorf Dodge repaired the transmission at a cost of $309.49, but because the repair was covered under the Lifetime Warranty, Johnson paid only the $100 deductible and was provided a rental vehicle at no cost during the 30-day repair.

In November 2019, Johnson brought the Ram Truck to DARCARS Chrysler Jeep Dodge in Marlow Heights, Maryland for transmission issues, and technicians diagnosed that the problem was burnt metal in the transmission pan and clutch failure. The Lifetime Warranty again covered the cost of repairs, which exceeded $7,800, and Johnson again paid only a $100 deductible. While the repairs took over two months, FCA covered Johnson's rental car expenses of approximately $5,400.

In January 2022, after the Ram Truck began making abnormal ticking noises, losing power, and showing poor engine performance, Johnson brought it back to Waldorf Dodge. Waldorf

4

Dodge service personnel inspected the car, informed Johnson that they had found metal shavings in the oil pan consistent with valve-train failure, and submitted requests to FCA for approval of repairs under the Lifetime Warranty. FCA's warranty department, however, did not authorize the repair. On February 22, 2022, Johnson directly contacted FCA's warranty department, which informed him that no claim had been filed for the Ram Truck. A short time later, Waldorf Dodge informed Johnson that FCA had cancelled his Lifetime Warranty. On October 12, 2022, FCA sent Johnson an email that stated: "Good Afternoon lifetime plan was cancelled due to via Inspections, inelig., Dual-Rear Wheel vehicle." Am. Compl. ¶ 47.

Overall, the Ram Truck remained at Waldorf Dodge for over a year, during which Johnson spent over $30,000 on rental vehicles. After Johnson retained counsel, Waldorf Dodge replaced the engine in the Ram Truck and, in a January 18, 2023 letter, confirmed that it had replaced the engine at no cost to Johnson but that the repair had not been processed under the Lifetime Warranty.

## III.    Latent Defect

Johnson asserts that all Dodge, Ram, Jeep, or Chrysler vehicles equipped with Gen III 5.7-liter HEMI or 6.4-liter HEMI 392 V-8 engines ("the Engines"), spanning model years 2014 to the present ("the Proposed Class Vehicles"), including his 2016 Ram Truck, have a latent valve-train defect that causes "premature camshaft and lifter wear, abnormal ticking, misfires, loss of power, and ultimately catastrophic engine failure." *Id.* ¶ 2. Johnson alleges that this defect is inherent in the design of the Engines and that Defendants were on notice of this defect from their own testing, warranty data, reports prepared by FCA engineers, consumer complaints to the National Highway Transportation Safety Administration, and widespread online reports. According to Johnson, this defect causes the Proposed Class Vehicles frequently to lose power, stall, or shut down while in

motion, which creates safety risks that are especially severe in high-speed traffic, where a high-velocity collision could cause fatal injuries. Johnson alleges that although he has now received a replacement engine for the Ram Truck, the new engine contains the same defective components that caused the first engine to fail and thus is "destined to fail again." *Id.* ¶ 51.

## IV.     Procedural History

On May 15, 2025, Johnson filed the original class action Complaint in this case in the Circuit Court for Charles County, Maryland. On June 17, 2025, FCA removed the case to this Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). On September 16, 2025, Johnson filed an Amended Complaint in which he alleges the following claims in the following numbered counts: (1) breach of contract; (2) breach of express warranty; (3) a violation of the Maryland Service Contracts and Consumer Products Guaranty Act ("MSCCPGA"), Md. Code Ann., Com. Law §§ 14–401 to 14–410 (LexisNexis 2024); (4) unfair or deceptive trade practices relating to the valve-train defect, in violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13–301 to 13–320; (5) fraudulent concealment; (6) negligent misrepresentation; (7) unfair and deceptive acts and trade practices relating to the Lifetime Warranty, in violation of the MCPA; (8) negligent design and manufacture; (9) unjust enrichment; (10) fraud based on intentional misrepresentation; (11) breach of the implied warranty of merchantability; and (12) a claim under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301–2312.

Johnson asserts these claims on behalf of a proposed class of Maryland residents who purchased or leased one of the Proposed Class Vehicles for model years from 2014 to the present ("Proposed Class Members"). He also asserts claims on behalf of a subclass of all Proposed Class Members who purchased the Lifetime Warranty. Johnson alleges that FCA designed,

manufactured, and sold engines with the latent valve-train defect, marketed the Proposed Class Vehicles as reliable, and used the Lifetime Warranty as a means to induce purchases. Johnson further alleges that Defendants deliberately concealed the valve-train defect, misrepresented the scope of the Lifetime Warranty, and cancelled or denied coverage when engine failures inevitably occurred. As a result, FCA profited from vehicle and warranty sales, and Waldorf Dodge profited from commissions, service revenue, and warranty cancellations.

Johnson seeks compensatory, punitive, and statutory damages, injunctive relief, restitution, attorney's fees and costs, and pre- and post-judgment interest.

## DISCUSSION

In its Motion to Dismiss, FCA asserts, pursuant to Federal Rule of Civil Procedure 12(b)(1), that this Court lacks jurisdiction over the MMWA class action claim and that Johnson lacks standing to assert claims relating to vehicle models and model years other than those of the Ram Truck. FCA further argues that, pursuant to Rule 12(b)(6), Johnson's claims should be dismissed because they are time-barred; because Waldorf Dodge was not FCA's agent; and because Johnson has failed to state a plausible claim as to each count of the Amended Complaint. In its Motion to Dismiss, Waldorf Dodge asserts that Johnson's claims in Counts 4, 5, 6, 7, and 10 are time-barred; that Waldorf Dodge is not liable on the breach of contract or warranty claims because in relation to those claims it was an agent, rather than a party, to the warranty; and that Johnson has failed to state a valid claim as to each count of the Amended Complaint.

## I.    Legal Standards

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when it believes that the plaintiff has failed to establish subject matter jurisdiction. When a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction,

the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). When a defendant asserts that facts outside of the complaint deprive the court of jurisdiction, the Court "may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004); *Kerns*, 585 F.3d at 192. The court should grant a Rule 12(b)(1) motion based on a factual challenge to subject matter jurisdiction "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). Although on a Rule 12(b)(6) motion, courts are generally limited to considering only the complaint and its attachments, courts are permitted to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's

authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)).

## II.    Jurisdictional Challenges

FCA argues that this Court lacks subject matter jurisdiction over Johnson's MMWA class action claim asserted in Count 12 and that Johnson lacks standing to assert class claims to the extent that they relate to vehicle models and model years other than those of the Ram Truck.

### A.    MMWA

The MMWA provides in relevant part that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief . . . in an appropriate district court of the United States," subject to certain conditions. 15 U.S.C. § 2310(d)(1). As a threshold issue, FCA contends that this Court lacks jurisdiction over Johnson's MMWA class claim because one such statutory condition is that an MMWA class claim must have at least 100 named plaintiffs. Specifically, the MMWA states that, as to claim filed in federal court: "No claim shall be cognizable . . . if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(3)(C). Multiple United States Courts of Appeals have applied this statutory restriction and also concluded that compliance with the requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), which does not require 100 named plaintiffs, does not excuse the failure to comply with this specific MMWA requirement. *See, e.g., Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1034–35 (9th Cir. 2020); *Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 183–85 (3d Cir. 2023). *But see Kuns v. Ford Motor Co.*, 543 F. App'x 572, 574 (6th Cir. 2013) (finding that CAFA supersedes the MMWA requirement). The United States Court of Appeals

9

for the Fourth Circuit has not addressed this issue. *Scott v. Cricket Commc'ns, LLC*, 865 F.3d 189, 194 n.3 (4th Cir. 2017) (identifying the issue but declining to address the interaction between the MMWA and CAFA).

However, in opposing the Motion, Johnson offers no argument, whether based on CAFA or otherwise, to excuse the MMWA's statutory requirement of 100 named plaintiffs for a class claim. Accordingly, the Court will dismiss Johnson's MMWA class claim. *See Kline v. Hyundai Motor Am. Inc.*, 751 F. Supp. 3d 542, 567–68 n.14 (D. Md. 2024) (declining to address the jurisdictional interplay between CAFA and MMWA where the plaintiffs argued only that their individual claims should not be dismissed).

**B.    Standing**

FCA also argues that Johnson does not have standing to sue on behalf of a class that includes the purchasers and lessors of vehicle models and vehicles from model years other than those of his own Ram Truck, a 2016 Dodge Ram 3500 ST 4x4, because he did not suffer any injury from any other model. Article III of the Constitution limits the federal judicial power to resolving "Cases" or "Controversies." U.S. Const. art. III § 2; *Ansley v. Warren*, 861 F.3d 512, 517 (4th Cir. 2017). Accordingly, whether a plaintiff has identified an actual case or controversy, and thus has standing to advance that case, is a question of subject matter jurisdiction. *South Carolina v. United States*, 912 F.3d 720, 726 (4th Cir. 2019). The "irreducible constitutional minimum" requirements to establish standing consist of three elements: (1) the plaintiff must have suffered an "injury in fact"; (2) the injury must be fairly traceable to the actions of the defendant: and (3) it must be "likely" that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted). In a class action case, courts "analyze standing based

on the allegations of personal injury made by the named plaintiff." *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 343 (4th Cir. 2017).

FCA's argument misapprehends Johnson's alleged injury and proposed class. Johnson alleges that he has personally suffered economic loss from a valve-train defect in his truck's engine and the related cancellation of his Lifetime Warranty. His claim is premised on an injury caused by a particular model of engine, not a particular model of truck. Thus, he proposes a class of plaintiffs who purchased or leased vehicles with the same kind of engine and were similarly harmed by the valve-train defect allegedly inherent to the Engines. This case is therefore unlike the authority cited by FCA in which the court held that a plaintiff who was not a customer of the defendant, and did not purchase or use the defendant's product, lacked standing. *See Bugoni v. Emp. Background Invest., Inc.*, No. 20-1133-SAG, 2020 WL 5994958, at *6 (D. Md. Oct. 9, 2020). Where Johnson is undisputedly a customer of Defendants, purchased and used their product, and has alleged an injury based on the engine in the vehicle, as well as based on the Lifetime Warranty that had been broadly available to Defendants' customers, Johnson has alleged injuries-in-fact that support a finding of standing to sue Defendants. In turn, where Johnson has adequately alleged an injury-in-fact common to himself and the Proposed Class Members based on the defect in the Engines and based on the Lifetime Warranty, his allegations are sufficient at this stage of the case to demonstrate his standing on behalf of the Proposed Class Members. *See Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 188 (4th Cir. 1993) (affirming a delay in ruling on standing until discovery was complete on how defendants' asbestos products harmed each plaintiff). Thus, the Court will not dismiss or narrow the class claims based on an alleged lack of standing.

### III.    Statutes of Limitations

FCA asserts that each of Johnson's claims is time-barred under the applicable Maryland statutes of limitations. Waldorf Dodge joins this argument as to Johnson's claims in Counts 4, 5, 6, 7, and 10. Johnson argues that his claims are not time-barred because even if they accrued outside of the applicable limitations period, the statute of limitations should be tolled because of Defendants' fraudulent concealment of the causes of action, the discovery rule, the continuation-of-events doctrine, and equitable estoppel.

In federal court, the statute of limitations is an affirmative defense, so Johnson is not required to plead sufficient facts to establish that the defense does not apply. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Rather, a Rule 12(b)(6) motion "cannot reach the merits" of such a defense except "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense . . . 'clearly appear[] *on the face of the complaint*." *Id.* (quoting *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993)). Maryland law generally adheres to the discovery rule, under which a claim accrues when the plaintiff "knew or reasonably should have known of the wrong." *Poffenberger v. Risser*, 431 A.2d 677, 680 (Md. 1981). This occurs when the plaintiff knew or reasonably should have known of the "operative facts giving rise to the cause of action." *Cain v. Midland Funding, LLC*, 256 A.3d 765, 784 (Md. 2021) (quoting *Crowder v. Master Fin., Inc.*, 933 A.2d 905, 921 (2007), *aff'd in part, Master Fin., Inc. v. Crowder*, 972 A.2d 864 (2009)).

### A.    Counts 1 and 3: Claims for Breach of the Lifetime Warranty

FCA argues that the breach of contract claim in Count 1 and the MSCCPGA claim in Count 3, both of which relate to the cancellation of the Lifetime Warranty, are time-barred. The MSCCPGA creates a statutory private right of action arising from "any wrongful breach of a

guaranty or wrongful breach of a service contract." Md. Code Ann., Com. Law § 14–407(c). Under Maryland law, a breach of contract is subject to a three-year statute of limitations claim. Md. Code Ann., Cts. & Jud. Proc. § 5–101 (LexisNexis 2025); *Murphy v. Liberty Mut. Ins. Co.*, 274 A.3d 412, 430 n.37 (Md. 2022). This same limitations period applies to a claim under the MSCCPGA. *See* Md. Code Ann., Cts. & Jud. Proc. § 5–101 ("A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced"); Md. Code Ann., Com. Law §§ 14–401 to 14–410 (not specifying an alternative limitations period for the MSCCPGA).

FCA primarily argues that Counts 1 and 3 are time-barred because any claim based on the Basic Limited Warranty or the Powertrain Limited Warranty (the "Limited Warranties") accrued after those warranties expired no later than December 2021, which was more than three years before the original Complaint in this case was filed on May 15, 2025. In the Amended Complaint, however, Johnson makes no claims based on the Limited Warranties and instead premises the breach of contract claim in Count 1, and the relevant part of the MSCCPGA claim in Count 3, on a breach of the Lifetime Warranty.

Johnson alleges that there was a breach of the Lifetime Warranty, which Defendants honored on two occasions by paying for necessary repairs to the Ram Truck in May 2018 and November 2019, only after the Ram Truck's engine had a valve-train failure in January 2022 and FCA canceled the Lifetime Warranty rather than pay for the repairs. FCA argues that the breach of contract and MSCCPGA claims accrued on February 22, 2022, when Johnson "directly contacted FCA's warranty department and was told that no claim had been filed for his Truck." Am. Compl. ¶ 46. Such a statement, however, did not put Johnson on notice as of that date that the Lifetime Warranty was being canceled. Rather, Johnson alleges that Waldorf Dodge informed

13

him that FCA had canceled his Lifetime Warranty "[s]hortly thereafter," but he has not identified the date of this communication. *Id.* Instead, Johnson asserts that "[o]n October 12, 2022, FCA sent Plaintiff an email confirming cancellation of the Lifetime Warranty." *Id.* ¶ 47. Where Johnson filed the original Complaint in this case on May 15, 2025, and the allegations in the Amended Complaint demonstrate only that he learned of the Lifetime Warranty cancellation sometime between February 22, 2022 and October 12, 2022, they do not demonstrate that these claims are untimely. The Court therefore will not dismiss Counts 1 and 3 as time-barred.

### B.    Counts 2, 11, and 12: Engine Defect Warranty Claims

FCA argues that the breach of express warranty claim in Count 2, the breach of the implied warranty of merchantability claim in Count 11, and the MMWA claim in Count 12 are time-barred pursuant to the four-year statute of limitations applicable to warranty claims based on an alleged defect. *See* Md. Code Ann., Com. Law § 2–725 (providing the statute of limitations for claims based on contracts for the sale of goods, including warranties); *Joswick v. Chesapeake Mobile Homes, Inc.*, 765 A.2d 90, 93 (Md. 2001). Because the MMWA does not itself provide a statute of limitations, the MMWA is subject to this same state law statute of limitations for a breach of warranty claim. *See Rutherford v. BMW of N.A., LLC*, 579 F. Supp. 3d 737, 746 (D. Md. 2022).

Specifically, this limitations provision states in relevant part that:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

Md. Code Ann., Com. Law § 2–725.

Thus, for a breach of warranty claim, the general rule is that the breach "occurs when tender of delivery is made, and an action for breach of that warranty must be filed within four years after that event, even if the buyer is unaware of the breach." *Joswick*, 765 A.2d at 93; *see Washington Freightliner, Inc. v. Shantytown Pier, Inc.*, 719 A.2d 541, 544, 551 (Md. 1998) (reaching the same conclusion for a claim based on the implied warranty of merchantability). However, "if the warranty explicitly extends to future performance of the goods, and discovery of that breach could not have reasonably occurred until the time of that performance," then the cause of action accrues "when the breach is or should have been discovered, and the buyer has four years after that time within which to file suit." *Id.* at 93.

In *Joswick*, the Court of Appeals of Maryland, now the Supreme Court of Maryland ("Maryland Supreme Court"), held that "a commitment to repair or replace" defective parts "is not a warranty of future performance that falls within the exception" of section 2–725(2). *Joswick*, 765 A.2d at 95. Therefore, when a warranty states that "goods have a certain positive quality or are free from all or certain defects but states no time period during which the goods will continue to have that quality," that warranty does not extend to any future performance but instead is "breached upon tender of delivery," and "the buyer has four years from that date to file suit, even if the breach is not, in fact, discovered within that period." *Id.* at 96.

In *Washington Freightliner*, the Maryland Supreme Court similarly held that there is no discovery rule applicable to claims for breach of the implied warranty of merchantability, such that the cause of action "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id.* at 544 (quoting Md. Code Ann., Com. Law § 2–725); *see also Kline*, 751 F. Supp. 3d at 563 n.13 (citing *Washington Freightliner*, 719 A.2d at 544–45). Thus,

15

"the statute of limitations will always start to run against claims based on implied warranty from the time when delivery of the goods is tendered." *Washington Freightliner*, 719 A.2d at 545 (quoting William D. Hawkland, Uniform Commercial Code Series § 2–725:02, at 725 (1994)). Accordingly, the limitations period on Johnson's warranty claims in Counts 2, 11, and 12 would appear to run from the date of the purchase of the Ram Truck on December 24, 2016 and would therefore have elapsed on December 24, 2020. Where Johnson filed this case in state court on May 15, 2025, those claims would appear to be time-barred.

However, section 5–203 of the Courts and Judicial Proceedings Article of the Maryland Code provides that: "If the knowledge of a cause of action is kept from a party by the fraud of an adverse party, the cause of action shall be deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud." Md. Code Ann., Cts. & Jud. Proc. § 5–203. The Maryland Supreme Court has recognized that this provision differs from the discovery rule and could apply to a warranty claim. *See Morris v. Osmose Wood Preserving*, 667 A.2d 624, 638 n.12 (Md. 1995) (declining to dismiss a warranty claim on statute-of-limitations grounds when section 5–203 was invoked); *cf. Mathews v. Cassidy Turley Md., Inc.*, 80 A.3d 269, 288 (Md. 2013) (finding that a version of the discovery rule did not apply to toll the limitations period for a Maryland securities fraud claim but noting that section 5–203 could provide for tolling "on the basis of a defendant's fraudulent concealment" where there is "affirmative misconduct by the defendant, not just the exercise of due diligence by the plaintiff").

Moreover, as the Maryland Supreme Court has stated in relation to section 5–203, whether knowledge of a cause of action was hindered by fraudulent concealment is "a fact-intensive inquiry." *Mathews*, 80 A.3d at 288. At this early stage, and where the Court finds that Johnson

16

has adequately pleaded a fraudulent concealment claim, *see infra* part VI.D, the Court will not dismiss Counts 2, 11, and 12 based on the statute of limitations.

### C.    Counts 4–10:  Tort-Based Claims

The remaining claims, in Counts 4 through 10 ("the tort-based claims"), are all subject to Maryland's general three-year statute of limitations for civil actions.  Md. Code Ann., Cts. & Jud. Proc., § 5–101; *see Cain*, 256 A.3d at 784.  Specifically, the MCPA claims in Counts 4 and 7, the fraudulent concealment claim in Count 5, the negligent misrepresentation claim in Count 6, the negligent design and manufacture claim in Count 8, the unjust enrichment claim in Count 9, and the fraud based on intentional misrepresentation claim in Count 10 are all subject to this three-year statute of limitations.  *Master Fin., Inc. v. Crowder*, 972 A.2d 864, 872 (Md. 2009) (MCPA); *Estate of Adams v. Cont'l Ins. Co.*, 161 A.3d 70, 82, 84 (Md. Ct. Spec. App. 2017) (negligent misrepresentation, fraudulent misrepresentation, and fraudulent concealment); *Litz v. Md. Dep't of Env't*, 76 A.3d 1076, 1086 (Md. 2013) (negligence); *Ver Brycke v. Ver Brycke*, 843 A.2d 758, 775 (Md. 2004) (unjust enrichment).  Although Defendants generally acknowledge that the discovery rule governs when these claims accrued, FCA argues that Count 9, unjust enrichment, accrued at the time of purchase.  The discovery rule, however, applies to unjust enrichment claims, as it generally does to all civil claims.  *See Jason v. Nat'l Loan Recoveries, LLC*, 134 A.3d 421, 430 (Md. Ct. Spec. App. 2016).

These counts are premised on Johnson's allegation that Defendants were aware of the valve-train defect but did not disclose it to Johnson, that Defendants misrepresented that the Lifetime Warranty would cover the cost of repairs for life when they knew that the Ram Truck was ineligible for the Lifetime Warranty and failed to disclose that fact, or both.  As discussed above, the allegations in the Amended Complaint do not clearly demonstrate that Johnson was on

17

notice more than three years before he filed the original Complaint on May 15, 2025 that the Lifetime Warranty would be canceled, *see supra* part III.A., and for the same reasons the Amended Complaint does not establish that Johnson was on notice that Defendants had made misrepresentations about the applicability of the Lifetime Warranty prior to that date.

Waldorf Dodge asserts the additional argument that claims based on the cancellation of Lifetime Warranty accrued in May 2018, when Waldorf Dodge provided Johnson with the terms of that warranty with the VIP Summary Report. The Amended Complaint, however, alleges that the VIP Summary Report confirmed that the Lifetime Warranty was in effect, and that Waldorf Dodge twice paid for repairs pursuant to the Lifetime Warranty prior to its cancellation. Where the allegations support the conclusion that Defendants lulled Johnson into believing that the Lifetime Warranty was enforceable indefinitely, the Court does not find that the tort-based claims based on the Lifetime Warranty accrued as early as May 2018.

As for the tort-based claims based on the alleged valve-train defect, FCA argues that Johnson knew or should have known of the relevant facts by January 2022, when the Ram Truck began abnormally ticking and losing power. However, as alleged in the Amended Complaint, when Johnson notified Waldorf Dodge of these problems, he was told that the noise was "normal." Am. Compl. ¶ 44. Although Johnson alleges that a Waldorf Dodge service representative "later informed [him] that metal shavings had been found in the oil pan, consistent with valve-train failure," he has not provided a date for that communication, and even if he had, this discussion does not demonstrate that there was a defect in the engine. *Id.* ¶ 45. Rather, Johnson now asserts that he did not discover the valve-train defect until December 2023. Where the Amended Complaint does not clearly demonstrate that Johnson knew or should have known of the valve-

18

train defect prior to October 2022, *see Goodman*, 494 F.3d at 464, the Court will not presently dismiss claims based on the valve-train defect as time-barred.

## IV.  Agency

Defendants each seek dismissal of certain claims based on issues relating to agency.  FCA argues that it is not liable for any of Waldorf Dodge's actions because Johnson has not adequately pleaded that Waldorf Dodge acted as FCA's agent, while Waldorf Dodge argues that the claims against it in Counts 1–3 and 12 must be dismissed because any involvement Waldorf Dodge had with the Lifetime Warranty was as the agent of a fully disclosed principal, rather than as a party to the Lifetime Warranty contract.

An agency relationship is created when the principal confers actual authority on the agent by "written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him so to act on the principal's account," or when an agent has apparent authority through "certain acts or manifestations by the alleged principal to a third party leading the third party to believe that an agent had authority to act."  *Dickerson v. Longoria*, 995 A.2d 721, 735 (Md. 2010).  Generally, "[i]f an agent fully discloses the identity of his principal to the third party, then, absent an agreement to the contrary, he is insulated from liability" in relation to a contract between the principal and the plaintiff.  *Curtis G. Testerman Co. v. Buck*, 667 A.2d 649, 653 (Md. 1995); *see also Hill v. County Concrete Co., Inc.*, 672 A.2d 667, 670 (Md. Ct. Spec. App. 1996).

As to FCA's argument, Johnson has adequately pleaded an agency relationship that would impose liability on FCA for Waldorf Dodge's actions.  The Amended Complaint alleges that "authorized dealerships, including [Waldorf Dodge] . . . act as FCA's agents:  disseminating FCA-prepared marketing materials, selling FCA-issued warranties, and performing warranty service

strictly according to FCA instructions," as well as selling FCA vehicles. Am. Compl. ¶ 22. Johnson also references and attaches the December 24, 2016 Sales Contract, which states in a "Notice to Dealer" that "FCA US LLC may set off any money it owes you to reimburse for any claim due to breach of the foregoing representations and/or your failure to perform your obligations as FCA US LLC's agent with regard to this contract." Sales Contract at 1. This language shows that FCA conferred actual authority on Waldorf Dodge to sell FCA-issued warranties and to perform warranty service according to FCA's instructions. *Id.* Accordingly, the Court finds that Johnson has plausibly alleged that FCA is liable as a principal for the actions of Waldorf Dodge, as its agent, relating to the sale of FCA vehicles and warranty service plans.

As for Waldorf Dodge's argument that it cannot be held liable for FCA's conduct because it had disclosed the agency relationship to Johnson, an agent is still liable on a contract unless the identity of the principal is fully disclosed. *See A.S. Abell Co. v. Skeen*, 288 A.2d 596, 597–98 (Md. 1972) (noting that a plaintiff must establish that "it was unaware of the agency-principal relationship" to hold the agent liable on a contract). Here, where the only reference to a disclosure of Waldorf Dodge's role as an agent for FCA appears in the fine print of the Sales Contract in a notice directed to the dealer and not the purchaser, it is not yet clear whether Johnson was fully informed of and actually aware of the principal-agent relationship between FCA and Waldorf Dodge at the time of the transaction. Thus, at this early stage, the Court will not dismiss the claims against Waldorf Dodge in Counts 1–3 and 12 on this basis.

## V.    Contract-Based Claims

Johnson asserts five claims based on a breach of a contract or a warranty, including the breach of contract claim in Count 1, the breach of express warranty claim in Count 2, the MSCCPGA claim in Count 3, the breach of implied warranty of merchantability claim in Count

11, and the MMWA claim in Count 12. *See Morris*, 667 A.2d at 631 (noting that contract actions include actions based on a "breach of implied or express warranties"). In addition to asserting the arguments for dismissal discussed above, Defendants seek dismissal of each of these counts based on an alleged failure to state a plausible claim for relief.

### A.    Count 1:    Breach of Contract

In Count 1, Johnson has asserted a claim of a breach of contract arising from the cancellation of the Lifetime Warranty and asserts a similar claim in the MSCCPGA claim in Count 3. These claims generally relate to the assertion that Defendants agreed to provide Johnson with a Lifetime Warranty for the Ram Truck but then canceled that agreement when the Ram Truck's engine failed. In seeking dismissal, FCA generally argues that Johnson has not adequately pleaded a breach of contract because Johnson's vehicle was never eligible for the Lifetime Warranty.

"To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). FCA argues that there is no viable breach of contract claim arising from its cancellation of Johnson's Lifetime Warranty because the Ram Truck was a dual rear-wheel vehicle that was not eligible for coverage under the terms of the Lifetime Warranty program. In the Amended Complaint, Johnson references and attaches the Sales Contract, which specifically states that the "MAXCARE" extended service plan, consisting of the Lifetime Warranty, was purchased contemporaneously with the Ram Truck at an additional cost of $5,995, and was thus a term of the Sales Contract. Sales Contract at 1–2, Am. Compl. ¶ 33. While this contract specifies that it is "an application for a Mopar Vehicle Protection Plan and does not constitute a contract until accepted by FCA US LLC," *id.*, there is no dispute that FCA accepted Johnson's payment of $5,995 for the Lifetime Warranty. Johnson also attached to the

21

Amended Complaint the May 23, 2018 VIP Summary Report provided by Waldorf Dodge that shows that the Ram Truck was then covered by a "Lifetime Maximum Care" plan expiring on March 23, 2100 or after 999,999 miles, which provides substantial evidence that FCA, regardless of any general exclusions in the program, had specifically agreed to provide the Lifetime Warranty to Johnson's Ram Truck. VIP Summary Report at 2. The Court therefore finds that Johnson has plausibly alleged that FCA entered into a contractual obligation to provide the Lifetime Warranty coverage to Johnson, which it then breached by canceling the Lifetime Warranty before the stated expiration date or mileage. The Motions will therefore be denied as to the breach of contract claim in Count 1.

### B.      Count 3: MSCCPGA

Count 3 alleges a violation of the MSCCPGA arising from the failure to honor the Lifetime Warranty in relation to the Ram Truck. As relevant here, the MSCCPGA states that a "provider," defined as "a person or persons acting in concert who are contractually obligated under the terms of a service contract to provide services to the owner of a product covered by the service contract," Md. Code Ann., Com. Law § 14–401(h), "shall fulfill the obligations under [a] service contract according to its terms . . . at or within the period stated in the service contract, or if no period is stated, within a reasonable time" and for "the stated duration of the service contract." *Id.* § 14–404(a)(2). A service contract is defined as:

> a contract or agreement for a separately stated consideration for a specific duration to perform the repair, replacement, or maintenance of a product, or to indemnify for the repair, replacement, or maintenance, because of an operational or structural failure due to a defect in materials, workmanship, or normal wear and tear, with or without additional provisions for incidental payment of indemnity under limited circumstances.

*Id.* § 14–401(k)(1). The MSCCPGA also requires a "guarantor," which it defines as "a person who is engaged in the business of making consumer products available to consumers and who

makes a guaranty," *Id.* § 14–401(c), to "fulfill the guarantor's guaranty according to its terms . . . [w]ithin a reasonable time" and for "the stated period of the guaranty or, if no period is stated, for a reasonable period of time." *Id.* § 14–404(a)(1). A "guaranty" includes a "written undertaking to refund, repair, replace, or take other remedial action with respect to the consumer product if it proves defective in material or workmanship or fails to meet a specified level of performance" that "is made at the time of the sale of a consumer product by a guarantor to a person guaranteed and which is part of the basis of the bargain between them." *Id.* § 14–401(d).

FCA argues that Count 3 should be dismissed for the same reason articulated in relation to Count 1, that the Ram Truck was never eligible for the Lifetime Warranty. For the same reasons discussed in relation to Count 1, the Court will not dismiss Count 3 on that basis. *See supra* part V.A.

FCA also argues that Count 3 should be dismissed because the MSCCPGA applies only to breaches of a guaranty or service contract relating to "materials and workmanship" and thus does not apply to claims of a design defect. FCA Mot. Dismiss at 7, ECF No. 38-2. The MSCCPGA, however, expressly and broadly defines a guaranty as including agreements to remedy a consumer product that "fails to meet a specified level of performance," Md. Code Ann., Com. Law § 14–401(d), and broadly defines a service contract as including contracts or agreements that cover "operational or structural failure due to . . . normal wear and tear," *id.* § 14–401(k)(1). Under these definitions, the failure to honor the Lifetime Warranty for any reason could violate the MSCCPGA. In any event, Johnson also alleges that FCA "negligently manufactur[ed] and assembl[ed] engines with components that failed to conform to specifications and quality standards," a claim which relates to a manufacturing defect. Am. Compl. ¶ 139. Accordingly, the Court rejects the arguments for dismissal of Count 3.

### C.    Count 2: Breach of Express Warranty

FCA seeks dismissal of Count 2 based on the same theory addressed above in relation to Counts 1 and 3, that the Ram Truck was never eligible for the Lifetime Warranty. To the extent that the breach of express warranty claim in Count 2 is premised in part on the cancellation of the Lifetime Warranty, and the Court has already found that the allegations are sufficient to support that claim, it will not dismiss this claim on that basis. *See supra* part V.A.

FCA also argues that to the extent that the breach of express warranty claim is based on oral representations by Waldorf Dodge sales staff or statements made in FCA advertising, it fails because the identified representations were all legally inactionable puffery. Under Maryland law, statements of "indefinite generality" and "puffing and sales talk" are not legally actionable because such statements are "offered and understood as an expression of the seller's opinion only, which is to be discounted as such by the buyer, and on which no reasonable person would rely." *McGraw v. Loyola Ford, Inc.*, 723 A.2d 502, 512–13 (Md. Ct. Spec. App. 1999). In *McGraw*, the court found that a car dealer's statement that a vehicle was "the most outstanding value on the lot" was legally inactionable puffery. *Id.* at 512. As discussed above, however, the breach of express warranty claim against FCA may proceed without reliance on oral statements, based on the terms of the Sales Contract and subsequent events and records. *See supra* part V.A. Further, Johnson has alleged certain statements by Waldorf Dodge sales staff that specifically represent that the Ram Truck would be covered by the Lifetime Warranty if purchased, such as the statement that "all repairs to covered components, including the engine and transmission, would be covered for life" that is clearly not mere puffery. Am. Compl. ¶ 86. Johnson has also specifically alleged that FCA stated in national advertising that Ram trucks were "protected for life under the Lifetime Warranty." Am. Compl. ¶ 88. Although FCA asserts that Johnson failed to assert that he viewed

24

such an advertisement prior to the purchase, the breach of warranty claim does not depend on this particular fact, and it is premature to dismiss a claim of this type based on the lack of specificity of allegations about the advertising. *See Collins v. Li*, 933 A.2d 528, 575, 578–79 (Md. Ct. Spec. App. 2007) (holding that the plaintiffs had adequately alleged that manufacturer defendants had expressly warranted that their smoke detectors were fit for detection and advanced warning of fires through their "marketing, advertisements, warranties, sales literature, owner's manuals, and other representations," even though the plaintiffs had not specifically identified the marketing materials that extended the express warranties, which should be submitted to the court pursuant to a motion for summary judgment or a trial on the merits), *aff'd sub nom. Pittway Corp. v. Collins*, 973 A.2d 771 (Md. 2009). Accordingly, the breach of express warranty claim will not be dismissed based on FCA's claims that the oral statements of sales staff and FCA's advertising cannot support a warranty claim.

FCA further contends that Count 2 should be dismissed because Johnson has pleaded only a design defect, not a manufacturing defect, but the Limited Warranties cover only manufacturing defects. Even if the Limited Warranties include such a restriction, as discussed above, the breach of express warranty claim is based primarily on the failure to honor the terms of the Lifetime Warranty, so this argument does not warrant dismissal of Count 2.

Finally, FCA argues that Johnson's breach of warranty claims must be dismissed because pre-suit notice is required to assert such a claim, and FCA did not receive such notice. Md. Code Ann., Com. Law. § 2-607(3)(a) ("The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy"). A plaintiff, however, is required to give pre-suit notice of a breach of warranty claim only to the immediate seller, and "the manufacturer or distributor who placed or maintained the defective

goods in the marketing stream" must rely on others in the distribution chain to receive notice. *Firestone Tire & Rubber Co. v. Cannon*, 452 A.2d 192, 192–93, 198 (Md. Ct. Spec. App. 1982) (in discussing claims for breach of an express or implied warranty, stating that "the 'seller' referred to in § 2–607(3)(a) could have meant only the immediate seller"), *aff'd*, 456 A.2d 930 (Md. 1983). FCA does not contest that Johnson provided pre-suit notice to Waldorf Dodge, and Johnson in fact has submitted that pre-suit notice consisting of a December 27, 2023 demand letter. 12/27/23 Demand Letter, Opp'n FCA Mot. Dismiss Ex. 3, ECF No. 43-3. Accordingly, the Court will not dismiss the breach of express warranty claim in Count 2 on this basis.

### D.    Count 11: Implied Warranty of Merchantability

In Count 11, Johnson asserts a claim of a breach of the implied warranty of merchantability, which requires a plaintiff to establish "'three product litigation basics': the existence of a defect, attribution of the defect to the seller, and a causal relationship between the defect and plaintiff's damages." *Crickenberger v. Hyundai Motor Am.*, 944 A.2d 1136, 1143–44 (Md. 2008). Under Maryland law:

> Goods to be merchantable must be at least such as
>
> (a) Pass without objection in the trade under the contract description; and
> (b) In the case of fungible goods, are of fair average quality within the description; and
> (c) Are fit for the ordinary purposes for which such goods are used; and
> (d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
> (e) Are adequately contained, packaged, and labeled as the agreement may require; and
> (f) Conform to the promises or affirmations of fact made on the container or label if any.

Md. Code Ann., Com. Law § 2–314(2).

In relation to a motor vehicle, the implied warranty of merchantability "not only warrants that the automobile will operate effectively, but that it will provide reasonably safe transportation."

26

*Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 285 (Md. 2007). For a claim of a breach of that warranty, a plaintiff "need only plead that the automobiles were sold with a defect and that the defect rendered the goods unfit for ordinary and safe use." *Id.* at 290. To prevail on an implied warranty claim, the plaintiff must establish "that the defect existed at the time of sale." *Crickenberger*, 944 A.2d at 1143 (quoting *Giant Food, Inc. v. Wash. Coca–Cola Bottling Co., Inc.*, 332 A.2d 1, 10 (1975)).

Here, Defendants both seek dismissal of Count 11 on the grounds that, where the first problem with the Ram Truck did not arise until January 2022, five years after it was purchased, Johnson has not alleged facts showing that the Ram Truck was not merchantable at the time of sale. Johnson alleges that all of the Engines have a latent valve-train defect that causes "premature wear of camshaft lobes and hydraulic lifters, abnormal ticking and knocking noises, misfires, loss of power, and ultimately catastrophic engine failure." Am. Compl. ¶ 17. This defect "creates serious safety risks" because vehicles equipped with one of the Engines "frequently lose power, stall, or shut down while in motion, making them inherently dangerous and creating an unreasonable risk of serious injury or death," particularly "when stalling in high-speed traffic, where the likelihood of a high-velocity rear-end collision could cause fatal injuries to occupants of both vehicles." *Id.* ¶ 20.

As for whether the allegations could support the claim that this defect existed at the time of sale, Johnson has alleged in the Amended Complaint that signs of this defect arose as early as November 2019, when technicians diagnosed his car with burnt metal in the transmission pan, which is consistent with a latent valve-train defect. Moreover, the fact that the defect did not appear for several years does not necessarily mean that the vehicle was safe and defect-free from the time of sale until signs of the defect emerged in 2019. In *Lloyd*, in which the plaintiffs brought

an implied warranty of merchantability claim based on allegedly defective seats in a car that would be unsafe in a collision, the Maryland Supreme Court reversed the dismissal of the claim even though the vehicle had been driven without incident and the relevant vehicle part had not yet malfunctioned, because the alleged defect arguably rendered the vehicle unsafe. *See Lloyd*, 916 A.2d at 290. Similarly, the engine defect alleged by Johnson may not have resulted in an immediate malfunction, but if it existed and could render the vehicle unfit or unsafe for operation, and in his case did in fact result in such a malfunction, it could support an implied warranty claim. *See id.* Accordingly, the Court will not dismiss Count 11 on this basis.

FCA also contends that the breach of implied warranty claim must be dismissed because pre-suit notice is required to assert such a claim. Where the Court has already concluded that Johnson's December 27, 2023 demand letter to Waldorf Dodge meets the pre-suit notice requirement for a breach of warranty claim, *see supra* part V.C, it will not dismiss Count 11 on this basis.

Waldorf Dodge further argues that the implied warranty claim against it should be dismissed because any design or manufacturing defects are attributable only to FCA. Under Maryland law, however, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind," and "a 'seller' includes the manufacturer, distributor, dealer, wholesaler or other middleman or the retailer." Md. Code Ann., Com. Law § 2–314(1). Thus, for purposes of products liability claims under Maryland law, including claims for a breach of an implied warranty of merchantability, liability applies to the "sellers," which consist of the "owners of personal property who transfer title to purchasers of that property for a price," including "a manufacturer, distributor, dealer, and retailer who own—i.e., have title to—the products during the chain of distribution." *Erie Ins. Co. v. Amazon.com, Inc.*,

925 F.3d 135, 140–41 (4th Cir. 2019); *see also Kowell Ford, Inc. v. Doolan*, 391 A.2d 840, 842 (Md. 1978) (remanding for a new trial on whether a dealership was liable for breach of implied warranty of merchantability). Here, Johnson has stated that Waldorf Dodge was the dealer for his allegedly defective vehicle. Therefore, the Court will not dismiss Count 11 on this basis as to Waldorf Dodge.

### E.    Count 12:  MMWA

As discussed above, the MMWA provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief . . . in an appropriate district court of the United States." 15 U.S.C. § 2310(d)(1). The MMWA therefore creates a federal claim for the breach of any written warranty, implied warranty, or service contract. "[A]s to both implied and written warranties, Congress intended the application of state law, except as expressly modified by Magnuson-Moss, in . . . breach of warranty actions." *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 291 (4th Cir. 1989) (quoting *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1013–14 (D.C. Cir. 1986)).

In the Amended Complaint, Johnson does not allege that Defendants violated any particular provision of the MMWA, but rather that Defendants' alleged breaches of the Lifetime Warranty and implied warranty are violations of the MMWA. In turn, Defendants argue that Johnson's individual MMWA claim should be dismissed for the same reasons that the claims in Counts 2 and 11 for breach of express and implied warranties should be dismissed. Where Defendants have not argued for dismissal for failure to state a claim based on any difference between an MMWA claim and a breach of warranty claim under state law, and where the Court has already concluded that it will not dismiss Johnson's claims based on the cancellation of the Lifetime Warranty, *see*

*supra* parts V.A–B, or the breach of express and implied warranty claims, *see supra* parts V.C–D, the Motions will be denied as to the MMWA claim asserted by Johnson individually. *See Kline*, 751 F. Supp. 3d at 567–68 (dismissing MMWA class claims, but not individual claims).

## VI.   Tort-Based Claims

Defendants assert various arguments for dismissal that apply to some or all of the tort-based claims in Counts 4 through 10, consisting of claims for violations of the MCPA, fraudulent concealment, negligent misrepresentation, negligent design and manufacture, unjust enrichment, and fraud by intentional misrepresentation. The Court will address those arguments as well as individualized arguments specific to individual tort-based claims.

### A.   Economic Loss Rule

In relation to Johnson's claims in Counts 4, 5, 6, 7, 8, and 10, FCA argues that these claims should be dismissed because tort recovery for purely economic losses is ordinarily not allowed. The "economic loss rule" generally provides that in products liability cases, "damages for economic loss are not available in a tort action and are recoverable, if at all, in contract causes of action and in the case of fraud, in actions for deceit." *Lloyd*, 916 A.2d at 265. The Maryland Supreme Court has recognized an exception to this rule when a defect in a product "presents a substantial, clear and unreasonable risk of death or personal injury." *Id.* at 266.

This argument fails because each of the identified counts falls under an exception to the economic loss rule. First, Counts 4 and 7 are statutory claims under the MCPA, not common law tort actions. The MCPA expressly authorizes actions for damages and states that "any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by this title." Md. Code Ann., Com. Law § 13–408. Therefore, Counts 4 and 7 are not barred by the economic loss rule.

Second, as discussed above, the economic loss rule does not apply to "actions for deceit," *Lloyd*, 916 A.2d at 265, which are "variously known as fraud, deceit, or intentional misrepresentation." *B.N. v. K.K.*, 538 A.2d 1175, 1182 (Md. 1988). Economic loss is also compensable in an action for negligent misrepresentation. *Lloyd*, 916 A.2d at 273–74. Therefore, the economic loss rule does not bar Counts 6 and 10, which are claims for negligent misrepresentation and intentional misrepresentation.

As for the remaining counts at issue, in *Lloyd*, in which the plaintiffs asserted claims based on allegedly defective seats in a car that they contended were unsafe because they could have caused serious injuries during an accident, the court held that tort claims alleging only economic loss could proceed under an exception to the economic loss rule for defects that "create a substantial and unreasonable risk of death or personal injury." *Id.* at 266, 274–75. Here, all of the identified claims, including Johnson's claims in Counts 5 and 8 for fraudulent concealment and negligence, fall under this exception. These claims are based in part on the failure to disclose a design defect in the engine that allegedly causes vehicles to "frequently lose power, stall, or shut down while in motion, making them inherently dangerous and creating an unreasonable risk of serious injury or death." Am. Compl. ¶ 20. Where Johnson has alleged that the defect at issue here falls within this exception, the Court will not dismiss any of the identified claims on the basis of the economic loss rule. *See Lloyd*, 916 A.2d at 274–75.

## B.   Elements of Fraud-Based Claims

Defendants also assert that certain tort-based claims relating to fraud or misrepresentations, specifically, the claims in Counts 4, 5, 6, 7, and 10, should be dismissed because the allegations do not state with particularity certain elements of such offenses.

31

Under Federal Rule of Civil Procedure 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Pursuant to this standard, a plaintiff must "allege 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Corder v. Antero Res. Corp.*, 57 F.4th 384, 401 (4th Cir. 2023) (quoting *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 553 (4th Cir. 2019)). State of mind, however, may be alleged generally. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake . . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally"); *U.S. ex rel. Sheldon v. Allergan Sales, LLC*, 170 F.4th 227, 242 (4th Cir. 2026) ("Even in these fraud-based claims, scienter may be alleged generally.").

"[A] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts." *Corder*, 57 F.4th at 401 (quoting *Edmonson*, 922 F.3d at 553). Notably, in cases "involving alleged fraud by omission or concealment," courts must apply a "relaxed standard," such that "plaintiffs may partly rely on information and belief without running afoul of Rule 9(b)." *Id.* at 402. This "relaxed standard," however, "does not eliminate the particularity requirement." *Id.* (quoting *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987)).

Rule 9(b) applies to the claims for fraudulent concealment in Count 5, fraud based on an intentional misrepresentation in Count 10, and unfair or deceptive trade practices under the MCPA in Counts 4 and 7. *See Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (stating that an "MCPA claim, which sounds in fraud, is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b)"). Contrary to FCA's claim, Rule 9(b) does not

apply to the negligent misrepresentation claim in Count 6. *See Baltimore Cnty. v. Cigna Healthcare*, 238 F. App'x 914, 921 (4th Cir. 2007) (stating that a "claim of negligent misrepresentation under Maryland law does not contain an essential showing of fraud and thus the heightened pleading requirements of Rule 9(b) do not apply").

### 1.    Actionable Misrepresentations

Defendants argue that all of these claims should be dismissed because Johnson has not alleged any actionable misrepresentation with particularity. Each of these claims require, among other elements, a false statement or an omission of a material fact. *See infra* parts VI.C–F. Defendants assert that they made no such misrepresentations because the identified statements by Waldorf Dodge sales staff were either not false or misleading or constituted inactionable puffery. FCA further asserts that any "promissory statements" cannot support any of these claims. FCA Mot. Dismiss at 12–13.

As discussed above, however, at least some of the statements about the Lifetime Warranty made by Waldorf Dodge sales staff during and in relation to the December 24, 2016 purchase of the Ram Truck were alleged with specificity and were not puffery. *See supra* part V.C. Such statements include a sales manager's statement that the Ram Truck was "covered for life," Am. Compl. ¶ 37, a salesperson's statement that "all repairs to covered components, including the engine and transmission, would be covered for life," *id.* ¶ 86, and a finance manager's statement that the Lifetime Warranty covered the powertrain and the engine, and that "It's Lifetime—all you have to do is bring it back," *id.* ¶ 38. Where Johnson has also pleaded that FCA ended up terminating the Lifetime Warranty and refusing to pay the cost of repairs otherwise covered by the warranty, the allegations support the conclusion that these statements were false. Relatedly, Johnson also alleges a material omission in that the Waldorf Dodge sales staff failed to disclose

that the Ram Truck, as a dual rear-wheel vehicle and one that would be used commercially, was ineligible for coverage under the specific terms of the Lifetime Warranty program. Further, Johnson alleges that Defendants' failure to disclose the valve-train defect in the Engines was a material omission.

As for FCA's contention that the statements that promised a Lifetime Warranty were inactionable promissory statements, generally, "predictions or statements which are merely promissory in nature and expressions as to what will happen in the future are not actionable as fraud." *Miller v. Fairchild Indus., Inc.*, 629 A.2d 1293, 1302 (Md. Ct. Spec. App. 1993) (quoting *Finch v. Hughes Aircraft Co.*, 469 A.2d 867, 888 (Md. Ct. Spec. App. 1984)). Viewing the allegations in the light most favorable to the plaintiff, as is required at this stage, the Court finds that the alleged misrepresentations relating to the Lifetime Warranty are fairly construed as allegedly false statements about the coverage or scope of that warranty, rather than predictions about future actions. Even if these statements were construed as promissory in nature, "[i]f such promissory or predictive statements are made with the present intention not to perform . . . courts will not apply the general rule." *Id.* Where Johnson has alleged that defendants promised warranty performance that "they never intended to honor," Am. Compl. ¶ 151, the Court finds that Johnson has adequately alleged actionable misrepresentations relating to the Lifetime Warranty, as well as the actionable material omissions discussed above.

### 2. Scienter

Defendants also seek dismissal of Counts 4, 5, 6, 7, and 10 on the grounds that Johnson has not adequately alleged that Defendants knew of the facts that were allegedly the subject of material omissions: the alleged valve-train defect and the ineligibility of the Ram Truck for Lifetime Warranty coverage at the time of sale. As to the design defect, the Amended Complaint

34

alleges that "Defendants possessed superior, often exclusive, knowledge of the Valve Train Defect." Am. Compl. ¶ 112. It further asserts that FCA knew of the valve-train defect, since at least 2012, based on its own "pre-production and durability testing," "internal warranty data, parts sales records, and dealership audits," "Case Reports prepared by FCA engineers," "hundreds of consistent consumer complaints filed with NHTSA, which FCA is legally required to monitor," and "widespread online complaints and forum posting documenting valve-train failures" that FCA closely monitored as part of its brand management. *Id.* ¶ 28. As to Waldorf Dodge, the Amended Complaint alleges that it knew of the defect because the FCA case reports were "circulated throughout FCA's dealer network." *Id.* ¶¶ 28, 105. Where Johnson has alleged specific bases for the claim that Defendants were aware of the design defect, the Court will not grant the Motions based on a lack of allegations of knowledge of facts underlying the misrepresentations and material omissions relating to the design defect.

As for the fact that the Ram Truck, as a dual rear-wheel truck, was ineligible for Lifetime Warranty coverage, where the allegations support the inference that the Waldorf Dodge sales personnel were in the business of selling Dodge vehicles and the Lifetime Warranty, it is a reasonable inference that they had knowledge of the terms of the Lifetime Warranty. Particularly where Rule 9(b) permits a plaintiff to allege state of mind generally, and where negligent misrepresentation is not even subject to Rule 9(b), the Court finds that the allegations relating to the intentional or negligent nature of the misrepresentations are presently sufficient.

### C. Counts 4 and 7: MCPA

Beyond these cross-cutting arguments, Defendants, individually or collectively, seek dismissal of each of the individual tort-based claims for failure to state a claim. Waldorf Dodge specifically argues for dismissal of the MPCA claims in Counts 4 and 7, which focus on unfair

trade practices. To establish an MCPA claim of unfair or deceptive trade practices, plaintiffs must allege: "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Alexander v. Carrington Mortg. Servs.*, LLC, 23 F.4th 370, 380 (4th Cir. 2022) (quoting *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012)). An "unfair or deceptive practice" includes the "knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with" the "promotion or sale of any consumer goods." Md. Code Ann., Com. Law § 13–301(9).

Waldorf Dodge argues that the MCPA claims fail because the statute applies only to consumer transactions, but at the time of sale, Johnson disclosed that he would use the truck for business. The MCPA defines "consumer goods" as goods "which are primarily for personal, household, family, or agricultural purposes." Md. Code Ann., Com. Law § 13–101(d)(1). Johnson alleges in the Amended Complaint that during his visit to purchase the Ram Truck, he "mentioned that it was his birthday and that the Truck was a gift to himself," and that he stated that "he owned a construction company," to which "the sales manager remarked that the purchase would be both a gift to himself and a gift to the company." Am. Compl. ¶ 37. Elsewhere in the Amended Complaint, Johnson "disclosed that he owned a construction company and intended to use the Truck for business purposes." *Id.* ¶¶ 112, 151. In opposing Waldorf Dodge's Motion, Johnson asserts that, in fact, the Ram Truck, though used for certain business purposes such as transporting work tools, was otherwise used for personal transportation, and that he has a different truck used specifically for the construction business. The Court may not consider these additional facts because a plaintiff may not amend the operative complaint through facts asserted in a brief on a motion. *Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D.Md.1997), *aff'd*, 141 F.3d 1162 (4th Cir. 1998). Nevertheless, the allegations in the Amended Complaint on this issue do not establish

36

that Johnson did not use the Ram Truck for personal purposes or the degree to which he used it for personal purposes as opposed to business purposes. At this early stage, prior to discovery that will provide specific evidence on this fact-based issue, and where the Court must construe all facts in the light most favorable to the plaintiff, the Court will not dismiss the MCPA claims on this basis.

### D.    Count 5: Fraudulent Concealment

A fraudulent concealment "is any statement or other conduct which prevents another from acquiring knowledge of a fact, such as diverting the attention of a prospective buyer from a defect which otherwise, he would have observed." *Lloyd*, 916 A.2d at 274. To assert a claim of fraudulent concealment, a plaintiff must allege that "(1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment." *Lloyd*, 916 A.2d at 274 (quoting *Green v. H & R Block*, 735 A.2d 1039, 1059 (1999)).

Beyond the arguments addressed above, Defendants seek dismissal of the fraudulent concealment claim in Count 5 on the grounds that Johnson has neither alleged that they owed a duty to disclose a material fact nor alleged that they affirmatively concealed such facts. However, Maryland law provides that even absent a duty to disclose, a defendant "who conceals facts that materially qualify affirmative representations may be liable for fraud." *Lubore v. RPM Associates, Inc.*, 674 A.2d 547, 556 (Md. Ct. Spec. App. 1996). An affirmative act of concealment includes any "statement, word, or act . . . which tends affirmatively to the suppression of the truth, or to a covering up or disguising of the truth, or to a withdrawal or distraction of a party's attention from the real facts." *Id.* Here, Johnson has alleged that Waldorf Dodge sales personnel were not merely silent on whether the Ram Truck would be covered by the Lifetime Warranty if it was purchased;

37

rather, they explicitly told Johnson that his truck would be "covered for life," reiterated that his warranty was "Lifetime," and listed a Lifetime Warranty on both the Sales Contract and the subsequent VIP Summary Report on his vehicle. Am. Compl. ¶¶ 37–40. Johnson also alleges that Defendants intentionally withheld the Lifetime Warranty document at the time of sale, thereby concealing the exclusion of dual rear-wheel vehicles from the Lifetime Warranty Program. The Court therefore finds that Johnson has alleged with sufficient particularity that Defendants not only failed to disclose material facts about the Ram Truck's eligibility for the Lifetime Warranty program but also concealed facts that materially qualified their affirmative representations. The Court therefore will not dismiss Count 5.

### E.    Count 10: Fraud Based on an Intentional Misrepresentation

In addition to the arguments already addressed in relation to Count 10, Waldorf Dodge asserts that the fraud claim based on intentional misrepresentation should be dismissed because Johnson has not sufficiently alleged a false statement with intent to deceive or that he suffered damages arising from any fraud relating to the Lifetime Warranty.

Under Maryland law, the elements of fraud based on an intentional misrepresentation are "(1) that a representation made by a party was false"; "(2) that either its falsity was known to that party or the misrepresentation was made with such reckless indifference to truth to impute knowledge to him"; "(3) that the misrepresentation was made for the purpose of defrauding some other person"; "(4) that that person not only relied upon the misrepresentation but had the right to rely upon it with full belief of its truth, and that he would not have done the thing from which damage resulted if it had not been made" and "(5) that that person suffered damage directly resulting from the misrepresentation." *B.N.*, 538 A.2d at 1182 (quoting *Suburban Mgmt. v. Johnson*, 204 A.2d 326, 329 (1964)).

38

As discussed above, at a minimum, Johnson has fairly alleged that Waldorf Dodge sales personnel told him that the Lifetime Warranty would provide coverage for the Ram Truck for the entirety of his ownership, which proved to be a false statement. As for whether the relevant statements were made with an intent to deceive, Johnson has alleged that Waldorf Dodge did not intend to honor this claim and that it acted "knowingly, willfully, and with reckless disregard for the truth" in order to induce reliance in the form of the purchase of the Ram Truck. Am. Compl. ¶¶ 151–152. Beyond the fact that state of mind may be alleged generally on a fraud claim, Fed. R. Civ. P. 9(b), Johnson provides certain specific allegations relating to this issue, including that Waldorf Dodge, as a car dealer, presumably would know the terms of the Lifetime Warranty and any exclusions, and that it did not provide Johnson with the full terms of the Lifetime Warranty at the time of sale, which arguably evidenced an intentional concealment of the potential lack of coverage. The Court therefore concludes that Johnson has sufficiently pleaded an intent to deceive.

As for damages, Waldorf Dodge argues that Johnson suffered no loss attributable to it because although he purchased the Lifetime Warranty for $5,995, FCA covered repairs totaling more than $13,500 under the Lifetime Warranty, and Waldorf Dodge covered the $15,000 cost of a new engine after the warranty was canceled. However, Johnson has alleged damages including overpayment for a vehicle with a defective engine, the loss of use of the Ram Truck for over a year and over $30,000 in rental vehicle costs incurred while Waldorf Dodge replaced his allegedly defective engine, and the diminished value of the Ram Truck going forward and the loss of the future coverage under the Limited Warranty. The Court therefore concludes that Johnson has adequately alleged damages resulting from the alleged intentional misrepresentation and will deny the Motions as to Count 10.

### F.    Count 6: Negligent Misrepresentation

Beyond the issues already addressed above, Waldorf Dodge seeks dismissal of Count 6 on the grounds that the written sales contract made any prior oral statements legally inoperative. To assert a claim for negligent misrepresentation, a plaintiff must allege that "(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence." *Lloyd*, 916 A.2d at 273.

As to the fourth element of a negligent misrepresentation claim, Waldorf Dodge argues that Johnson did not reasonably rely on any oral representation to his detriment because the Sales Contract rendered any prior oral agreements and understandings legally inoperative. Specifically, the fine print of the Sales Contract includes a provision that states: "The front and back of this Buyer's Order, together with any other documents signed by the Purchaser in connection with the subject transaction, comprise the entire agreement between the Parties. No oral agreements or understandings shall be binding." Sales Contract at 2. This claim, however, is not for a breach of the contract, but for negligent misrepresentation. Under Maryland law, such an integration clause does not bar a claim for fraudulent or negligent misrepresentation and does "not prevent the plaintiff from introducing evidence concerning pre-contractual promises, which are not mentioned in the written contract." *Greenfield v. Heckenbach*, 797 A.2d 63, 81 (Md. Ct. Spec. App. 2002).

FCA's argument that Johnson alleged only an intentional misrepresentation claim, but not a negligent misrepresentation claim, is similarly unavailing. The negligent misrepresentation claim includes an allegation that Defendants "should have known" that their statements were false

or misleading. Am. Compl. ¶ 124. Where a plaintiff may plead alternatively or inconsistently, Johnson's allegations that Defendants actually knew that their statements were false and misleading do not preclude his negligent misrepresentation claim. Fed. R. Civ. P. 8(d)(2)–(3) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones . . . [and] may state as many separate claims or defenses as it has, regardless of consistency."). The Motions will be denied as to the negligent misrepresentation claim in Count 6.

### G.     Count 8:  Negligent Design and Manufacture

The only argument relating to Count 8 not addressed above is Waldorf Dodge's brief assertion that this count should be dismissed as to Waldorf Dodge because the Proposed Class Vehicles were "designed, manufactured, assembled, and distributed by FCA," not Waldorf Dodge. Waldorf Dodge Mot. Dismiss at 14, ECF No. 39-1 (quoting Am. Compl. ¶ 2). However, Johnson also explicitly alleges that Waldorf Dodge engaged in negligent distribution of vehicles that "it knew or should have known contained unsafe and defectively designed and manufactured engines." Am. Compl. ¶ 140. Where Waldorf Dodge has offered no persuasive argument as to why these allegations are insufficient to state such a claim, the Motions will be denied as to Count 8.

### H.     Count 9:  Unjust Enrichment

"A claim of unjust enrichment is established when: (1) the plaintiff confers a benefit upon the defendant; (2) the defendant knows or appreciates the benefit; and (3) the defendant's acceptance or retention of the benefit under the circumstances is such that it would be inequitable to allow the defendant to retain the benefit without the paying of value in return." *Benson v. State*, 887 A.2d 525, 546 (Md. 2005). Although unjust enrichment is generally unavailable when the

41

subject matter of the claim is covered by an express contract, courts allow unjust enrichment claims "when there is evidence of fraud or bad faith" or "when the express contract does not fully address a subject matter." *Cnty. Com'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 609 (Md. 2000).

Beyond the arguments addressed above, FCA asserts that the unjust enrichment claim must be dismissed because Johnson has not demonstrated that he lacks an adequate legal remedy, that he conferred a benefit upon FCA, or that it would be inequitable for FCA to retain any payments. None of these arguments is tenable. First, although the Court has concluded that Johnson's contract-based claims may proceed, *see supra* part V, FCA maintains that the Lifetime Warranty did not apply to the Ram Truck, so the availability of a legal remedy for breach of contract remains in question. An unjust enrichment claim is properly pleaded as an alternative to a breach of contract claim when there is a question as to the existence or enforceability of the contract. *See Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190 F. Supp. 2d. 785, 792 (D. Md. 2002).

Second, Johnson has alleged that he conferred a benefit upon FCA. Specifically, Johnson has plausibly asserted that he conferred the benefit on Defendants of his payment for the Ram Truck, which he purchased in reliance on the applicability of the Lifetime Warranty, as well as his payment for the Lifetime Warranty itself. The argument that Johnson has not alleged facts supporting the conclusion that it would be inequitable for FCA to retain the benefit is entirely unpersuasive where he has alleged that after taking his payment for the Lifetime Warranty and honoring it twice, FCA changed course abruptly and canceled the Lifetime Warranty once the Ram Truck had a catastrophic engine failure.

For its part, Waldorf Dodge argues that the unjust enrichment claim should be dismissed because while Johnson paid $5,995 for the Lifetime Warranty, Waldorf Dodge spent nearly $15,000 to replace the Ram Truck's engine at no cost to Johnson after FCA canceled the Lifetime Warranty. Although Waldorf Dodge has a stronger argument than FCA on this claim, the allegations are sufficient to show that Waldorf Dodge received a benefit based on Johnson's purchase of the Ram Truck in reliance on the applicability of the Lifetime Warranty as asserted by Waldorf Dodge sales personnel, the fact that certain expenses such as rental car charges did not have to be paid, and the removal of any future obligation to cover repair costs under the Lifetime Warranty. *See Wallace v. Hawk*, 348 A.3d 627, 646 (Md. Ct. Spec. App. 2025) (noting that a "benefit" for an unjust enrichment claim includes saving a party "from expense or loss" and "any form of advantage" (citation omitted)). Where it is presently unclear how expenses associated with the Lifetime Warranty were and would be allocated between FCA and Waldorf Dodge, the Court will not dismiss the unjust enrichment claim against Waldorf Dodge at this stage of the case.

## CONCLUSION

For the foregoing reasons, FCA's Motion to Dismiss will be GRANTED IN PART and DENIED IN PART in that it will be granted as to Johnson's class action claim under the Magnuson-Moss Warranty Act, which will be dismissed, and will be otherwise denied. Waldorf Dodge's Motion to Dismiss will be DENIED. A separate Order shall issue.

Date:  May 20, 2026

THEODORE D. CHUANG
United States District Judge

43